JUSTUS J. FENNEL, ET AL.
vs.
FRANK L. McGUIRE, ET AL.

Superior Court       New London County          File #11591

Present:   Hon. CARL FOSTER, Judge.

George Dimenstein,              Attorney for Plaintiffs.

Charles J. McLaughlin;
Durey, Pierson & Comley;
Hull, McGuire & Hull;
Thomas E. Troland;
John T. Quinn;
Frank S. Shea;
Frederick S. Harris,          Attorneys for the Defendants.

**MEMORANDUM FILED NOVEMBER 30, 1937.**

FOSTER, J. On or about June 1, 1918, the 68th Regiment Coast Artillery Corps was organized as the coast defenses of Long Island Sound in the service of the United States Government, which was then engaged in the World War, and such regiment consisted of approximately 1800 men. About 25 per cent of the members of the regiment resided in Connecticut, 60 per cent in the State of Illinois and 15 per cent in other states. On August 8, 1918, the regiment left the coast defenses of Long Island Sound for foreign service in the United States Army and remained in France until after the declaration of peace.

Prior to August 8, 1918 a voluntary campaign was conducted in the States of Connecticut and Illinois by individuals and committees for the purpose of raising a fund to be used to provide and supply to the men of the 68th Regiment Coast Artillery Corps, while in the service of the United States during the World War, comforts, aids, benefits and assistance conducive to the mental, moral and physical welfare of such men, not ordinarily supplied through governmental channels.

As a result of such campaign a fund of $12,370.02 was raised by public subscription and turned over to the 68th Regiment Coast Artillery Corps prior to its departure for France. This fund was raised by contributions as follows:

$ 517.50 from the State of Illinois
$1388.00 from Stamford and Greenwich, Connecticut and vicinity
$1509.00 from Waterbury, Connecticut and vicinity
$1010.00 from Hartford, Connecticut and vicinity
$7945.52 from New London, Connecticut and vicinity

· The subscriptions included individual donations ranging from less than $1. up to $250., and it is impossible to determine who all the contributors were or the amounts each gave, but it is estimated that over 1000 persons contributed to the fund.

While the 68th Regiment Coast Artillery Corps was in service in France, the fund was administered by officers of the regiment, and, upon the termination of service of the regiment, the then commanding officer of the regiment delivered the unexpended balance of the fund, then amounting to $6,422.89, to Charles Hadlai Hull, now dec'd, late of New London, Connecticut, then an officer of the regiment.

After the declaration of peace in November, 1918, the military forces of the United States, with the exception of the regular army, were demobilized, and on March 3, 1919, the members of the 68th Regiment Coast Artillery Corps were discharged from further service, and the regiment was disbanded.

The unexpended balance of the fund was invested by Charles Hadlai Hull in United States Liberty Loan Bonds in the amount of $3,000. registered "The Band Fund, 68th Artillery, C.A.C., Charles Hadlai Hull or his successor as Captain C.A.C., N.Y." and the remainder of $3,422.89 was deposited

in the Savings Bank of New London in the name of Charles Hadlai Hull.

Thereafter such deposit account was made payable to Charles Hadlai Hull or Justus J. Fennel, the latter having been an officer of the Regiment, or to the survivor.

Charles Hadlai Hull died a resident of New London on December 20, 1934, and Grace Stoddard Hull was appointed and has qualified as administratrix of the Estate of Charles Hadlai Hull, dec'd and is now acting as such and has possession of the bank book and the Liberty Bonds.

The fund now consists of Liberty Bonds amounting to $3,000. and the sum on deposit in the Savings Bank of New London, Connecticut, which has now increased to the sum of $8,974.71 and a demand promissory note for $368.87 of J. M. Ganey and Henry S. Dorsey, Treas., J. Coleman Prince Post American Legion, dated December 15, 1924 and payable to the order of Charles Hadlai Hull and J. J. Fennel Trustees of 68th Artillery Trust Fund.

By reason of the declaration of peace and the disbanding of the 68th Regiment, the original purpose for which the fund was primarily collected can no longer be executed. Many members of the 68th Regiment are now deceased, and others are of parts unknown, and it is impossible to ascertain the names and addresses of all of the surviving members of the 68th Regiment.

Justus J. Fennel and Grace Stoddard Hull have instituted this action for advice and decree of the Court as to the disposition of the fund in their hands. They have named as defendants Frank L. McGuire of New London, Connecticut as a representative of the donors of the fund, W. Myron Weed of Stamford, Connecticut, as a representative of those from Connecticut who were members of the 68th Regiment, Roland E. Winkelmann of Illinois as representative of those from Illinois who were members of the regiment and Edward J. Daly, who at the time of the institution of this action was Attorney General of the State of Connecticut. The Department of Connecticut, The American Legion, Inc. has been admitted as party defendant. The plaintiffs and all the named defendants have appeared in court by counsel and have been fully heard orally and by written brief.

Commenting briefly on this state of facts, certain ultimate

facts are established, upon which an equitable conclusion should be based.

All of the fund, except about $500., was donated in Connecticut. The fund with its increment is now in New London County in the State of Connecticut. About 25 per cent of the members of the 68th Regiment were Connecticut men.

From these facts it is just to conclude that the Superior Court of New London County of the State of Connecticut should take jurisdiction of the fund.

Adopting the words of the Court in Procter vs. Mathers 17 O.App. 118, "Reflecting on the method of the creation of the fund, it may be said that the fund necessarily falls within the class designated as charity, although the motive that prompted the giving was patriotism superinduced by humanitarian impulses of the donors".

Since this Court takes jurisdiction of the fund, and since it is a fund to be used for charitable purposes, it is necessary that the rule of law governing the facts should be clearly determined.

"We have never assumed to exercise the prerogative power of the English Crown to direct the application of property given for a charitable purpose which is illegal but which except for such illegality would be charitable, or where it is given simply to charity without indicating further the character of the purpose or that a trustee is to administer it. Amer. Law Institute Restatement, Trusts (Tentative Draft No. 5) Sec. 389, Comment e; (Proposed Final Draft) Sec. 389; White vs. Fisk, 22 Conn. 31, 54; Adye vs. Smith, 44 Conn. 60, 70. The Restatement summarizes the general rule of law under which courts in this country apply a modified cy pres doctrine, or the doctrine of approximation, as follows: 'If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general purpose of the settlor.' Restatement, Op. Cit., Sec. 389. In a number of cases we have approved the application of the doctrine thus

generally stated where after the administration of a trust has begun, circumstances have arisen such that the method by which the testator sought to accomplish the charitable purpose intended cannot be carried out and, speaking of such a situation, we said in **Newton vs. Healy, Attorney General, 100 Conn. 5, 10, 122 Atl. 654:** 'It is now certain that the Superior Court, as a court of equity, possesses the power to carry out the general intent of the donor of a testamentary charitable trust, when clearly manifested, though the particular form or manner pointed out by the testator cannot, because of changed conditions, be followed'." **Shannon vs. Eno, 120 Conn. 77, 86.**

The donors gave their money to the 68th Regiment to be used for the benefit of members of the 68th Regiment. The 68th Regiment, the de facto trustee of the fund, has disbanded and is non-existent. Since the 68th Regiment is non-existent, it follows that there are now no members of the 68th Regiment. But many of those who were members of that regiment are now and for many years in the future will be living. We have, therefore, a trust fund, but no trustee. We have a trust fund, but no cestuis que trustent; though many, who were in a class such that they might have been declared cestuis que trustent before the disbandment of the 68th Regiment, still live. Though many of the individuals for whom the money was intended still live, the character of their need of the money has changed.

In the complaint it is alleged that the purpose of the donors of the fund was to supply to the donees "comforts, aids, benefits and assistance conducive to the mental, moral and physical welfare of the donees". This allegation is practically admitted by all of the parties. Some of the parties by brief have suggested certain classes of benefits for which the fund should in the future be expended. It may well be that in the future principal avenues of aid will be hospitalization and care of those in dire need. If, however, limitation of ways of expenditure is attempted by particularization, a case of the most desirable and appealing expenditure might be excluded. The donors did not limit the expenditure of the fund, but left such expenditure to the discretion of the trustee, to wit: the 68th Regiment, acting by its officers. So ought the Court to refrain from limitation and leave the expenditure to the discretion of trustees.

The donors intended that the principal, as well as the in-

come, should be expended. Such should be the decree of the Court.

There is much diversity of opinion among the parties as to the designation of the trustees.

The state has no equitable claim to such designation.

The American Legion, as a national unit, is composed of men who were members of all military units of the United States during the World War. The Department of Connecticut, The American Legion, Inc., can only be said to represent at most 25 per cent of the 68th Regiment. Both have machinery and information for handling such funds; but they have other funds of much larger amount and to them possibly of greater importance. There are many survivors of the 68th Regiment, who are members of the American Legion. They have the same means of obtaining information that the American Legion has. Every survivor of the 68th Regiment has more interest in the survivors of the 68th Regiment than has any one else. They know about this fund. It is their fund. Three trustees should be appointed by the Superior Court for New London County, State of Connecticut, from the surviving members of the 68th Regiment upon nomination of interested parties to hold office until superseded by such Court of its own motion or on motion of any interested party. The trustees should be under blanket bond of a surety company sufficient in amount to cover the amount of the fund. Following the procedure of this state as to trusts, the bond should run to the State of Connecticut.

Following the established rules of this state, the trustees should file an account in the Superior Court of New London County each three months, upon which a hearing should be held in open court after such notice as the Court may order.

Counsel in this case have aided the Court by able and exhaustive briefs. They are entitled to fees, to be paid from the fund; but, considering the nature and amount of the fund, such fees should be very moderate in amount.

Counsel for the various parties may draw proposed decrees in accordance with this opinion and submit the same to the Court for consideration. It is suggested that counsel confer as to the form of the decree and then claim the case for the short calendar list and at the hearing upon such claim be prepared to nominate to the Court the names of three men to be appointed as trustees.